## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| Daniel Levern Smith, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | 1:22cv175 (LMB/IDD) |
| | ) | |
| Harold Clarke, | ) | |
|     Respondent. | ) | |

### MEMORANDUM OPINION

Daniel Levern Smith ("Petitioner" or "Smith"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his February 7, 2019 convictions in the Circuit Court of Westmoreland County, Virginia for one count each of rape, sodomy, and strangulation. The respondent has filed a Rule 5 Answer and a Motion to Dismiss with supporting briefs and exhibits. [Dkt. Nos. 28-29]. Petitioner was advised of the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), in accordance with Local Rule 7(K), and responded by filing an opposition to the Motion to Dismiss [Dkt. No. 38] as well as several motions.[1] Accordingly, defendant's motion is ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition dismissed with prejudice.

### I. Procedural History and Background

On November 15, 2017, the Multi-Jurisdictional Grand Jury for Essex, Lancaster, Northumberland, Richmond, and Westmoreland Counties, Virginia, indicted Smith for one count

---

[1] Smith has filed a motion for extension of time to file his response [Dkt. No. 34] and a motion to proceed in forma pauperis [Dkt. No. 32]; however, because he has filed his response and paid the filing fee, these motions will be denied as moot. In addition, Smith has filed a motion to appoint counsel and a motion to dismiss "based on speedy trial violation," which repeats arguments contained in his petition and supplemental filings. [Dkt. Nos. 35 and 37].

each of rape, in violation of Virginia Code § 18.2-61; sodomy, in violation of Virginia Code § 18.2-67.1; and strangulation, in violation of Virginia Code § 18.2-51.6. Commonwealth v. Smith, Case Nos. CR17000276-00, CR17000277-00, and CR16000278-00. Each indictment named the same victim and each offense was alleged to have occurred on or about November 14, 2017 in Westmoreland County. The indictments were docketed for trial in the Circuit Court of Westmoreland County. A capias was issued on November 17, 2017, and it was executed on November 21, 2017. (CCT at 10). On December 1, 2017, after Smith asked for appointment of counsel, the circuit court appointed James Monroe ("Monroe") to represent him, and Smith's arraignment was set for December 15, 2017. Id. at 13, 14.

On December 15, 2017, Smith was arraigned, and the matter was continued to January 26, 2018 to allow Smith time to consider what pleas he would enter and, if he entered pleas of not guilty, whether he would waive his right to trial by jury. Two orders were entered on December 15, 2017, one of which did not include the number of the strangulation indictment. Id. at 17, 18. On January 26, 2018, the circuit court granted defense counsel's motion to have Smith undergo a mental evaluation to determine Smith's sanity at the time of the offense and his competency to stand trial. Id. at 21.

Smith was evaluated by Dr. Kevin McWilliams at the Williamsburg Psychology Center. In the report of his competency evaluation, issued on March 22, 2018, Dr. McWilliams found that Smith, who left school after he failed seventh grade three times, "performed consistently within the borderline range"; suffered from post-traumatic stress syndrome ("not so severe as to threaten his current competency to stand trial"); and, despite describing other symptoms, "demonstrated no signs of a true psychotic disorder." [Dkt. No. 38-1] at 47, 49. He concluded that Smith was competent to stand trial. Based upon that report, on March 23, 2018, the trial

2

court found Smith competent and set the case for a bench trial starting at 9:00 a.m. on June 15, 2018, after the parties waived a jury trial. (CCT at 23).

On June 15, 2018, Monroe filed a Motion to Dismiss based on a Speedy Trial Violation, arguing that Smith's right to a speedy trial, as guaranteed in Virginia Code § 19.2-243, had been violated because he had not been brought to trial within 152 days of his arrest. Id. at 39-42. The trial court denied the motion and started the trial proceeding by first reading to Smith each of the three indictments, asking him if he understood the charges, and asking how he wanted to plead to each. (6/15/18 Tr. at 6-8). Smith responded that he understood each of the three charges and pleaded not guilty to each. Id.[2] When the court asked him if he had spoken to Monroe about the charges, Smith answered, "once upon a time," and then added "he came to visit me two days ago." Id. at 6. The court asked Smith if he was taking any medicine and Smith indicated he was on medication but that he had not taken his Zoloft and Prozac that day because he had expected the case would be dismissed and there would not be a trial. Id. at 9-10. Smith then began a long complaint about Monroe having failed to meet with him until two days before the trial date and that, as a result, Smith had not had time to go over the case with his counsel and asked for a continuance of the trial. Monroe responded to Smith's complaint by explaining that he had met with Smith for a total of six hours and had received extensive discovery. The Commonwealth opposed Smith's request to continue the trial explaining that the victim had moved out of the area and had stayed in a shelter awaiting the trial. In addition, a "SANE nurse" and a detective were present and had been waiting all day. The prosecutor also summarized all of the discovery

---

[2] There is more than one version of the June 15, 2018 transcript in the record. The version in a folder by itself marked "Filed April 5, 2019" contains the hearing on the speedy trial motion and the subsequent plea proceedings and is 92 pages in length. The references in this Memorandum Opinion are to the version of the transcript that is 54 pages long, contains only the plea proceedings, and was attached to respondent's memorandum as Exhibit D. [Dkt. No. 29-4].

that Monroe had received through the prosecutor's open file policy. The prosecutor concluded by

stating that "it would be a hardship for the Commonwealth if the matter were continued." Id. at

20.

      The court denied Smith's oral motion for a continuance and gave him a few minutes to

speak with his attorney. Id. at 25-27. After speaking with Monroe, Smith asked for time to speak

with his father. The court granted that request. Id. at 27-28.

      After that brief recess, Smith advised the court that he wanted to change his not guilty

pleas to Alford pleas.[3] In response, the court conducted an extensive plea colloquy with Smith in

which the three indictments were read to Smith, id. at 29-31, and the court heard a proffer of the

evidence from the prosecutor. The proffer include a detailed description of the victim's

testimony, the corroboration of that testimony by a forensic examination of the victim, which

was consistent with her claim of a struggle, of being strangled, and of cutting Smith with a knife

in self-defense and which found Smith's DNA in the victim's vagina. Id. at 32-43. After the

proffer, the court asked Smith: "Are you entering the plea today because this would have been

the Commonwealth's evidence and you do not wish to take the risk that you would be found

guilty beyond a reasonable doubt on this evidence?" Id. at 43-44. To that question Smith

answered "yes." Id. Smith also responded "yes" to each of a series of questions asking whether

he understood the various rights he would give up by entering Alford pleas, he denied that

anyone had threatened or forced him to enter his Alford pleas or promised him anything

---

[3] Virginia courts allow for pleas based on North Carolina v. Alford, 400 U.S. 25 (1970) in which
a defendant avoids trial by conceding that the evidence is sufficient to establish guilt without
actually admitting that he committed the crime. "Virginia courts 'treat Alford pleas as having the
same preclusive effect as a guilty plea.'" Ramsey v. Commonwealth, 779 S.E.2d 241, 243 n.1
(Va. Ct. App. 2015).

concerning his pleas, and he stated that he understood the maximum punishments for the three

charges to which he was pleading. Id. at 44-46.

Based on this extensive colloquy, which would fully satisfy the requirements of Fed. R.

Crim. P. 11 if this were a federal case, the court found that Smith entered his Alford pleas

> freely, intelligently, voluntarily and with the advice of your attorney. We find that
> you understand the nature of the charges against you and the consequences of
> your plea . . . We further find from the summary of the evidence presented by the
> Commonwealth, is that there is substantial evidence to support the indictments
> against you and upon which, find[] you guilty of each count beyond a reasonable
> doubt.

(6/15/18 Tr. at 49-50). At the end of the colloquy, the court granted Smith's request to speak, and

Smith apologized to the victim, stating: "I would just like to apologize to her and say I am

sorry." Id. at 48, 50. The court accepted Smith's Alford pleas and set the sentencing hearing for

September 14, 2018.

In a letter filed in the circuit court on August 23, 2018, Smith, pro se, asked the court to

allow him to withdraw his Alford pleas. (CCT at 50). In that letter, Smith admitted he had

entered an Alford plea in a matter "sixteen years ago," but stated that he did not know anything

about an Alford plea and that his attorney, Monroe, had not discussed it with him. The letter

further stated that Monroe told him his charges would be dismissed and, if not, "don't worry we

going to waive speedy trial." Id. Smith complained about Monroe, claiming that Smith learned

about Alford pleas from a paralegal, that Monroe had never gone over the discovery with him,

that he had not taken his "meds" the morning of his pleas, and that if he had taken them he would

have fallen asleep. Id. at 50-53. Smith stated that after the speedy trial motion was denied, the

recess on June 15, 2018 was for "forty minute[s]." Id. at 51. In addition, Smith's letter reargued

his speedy trial motion, stated that he was arrested and read his "rights" on November 14, 2017,

5

professed his innocence, asserted that he and the victim had a consensual sexual relationship, and complained he had not been afforded a fair trial. Id. at 50-58. The motion was not granted.

The presentence report was filed on September 7, 2018. (CCT at 59). On September 14, 2018, the court granted a joint motion to continue the sentencing hearing to September 29, 2018. Id. at 61. On September 27, 2018, Monroe filed a motion to withdraw as counsel for Smith. In his motion, Monroe referenced Smith's statements to the court on June 15, 2018 that he was dissatisfied with Monroe's representation, as well as Smith's many letters expressing dissatisfaction with Monroe, and concluded that the "attorney-client relationship [could not] be restored." Id. at 63. The court granted the motion, appointed Anna R. Lindemann to represent Smith, and set a status conference for October 26, 2018. Id. at 65. The court then set Smith's sentencing hearing for November 29, 2018. Id. at 70. Two days before that hearing, Smith advised Lindemann that he wanted to withdraw his Alford pleas. Id. On November 28, 2018, Lindemann filed Smith's motion to withdraw his guilty pleas in which she summarily argued that Smith was pressured to plead guilty, that he did not understand what an Alford plea was, and that he had a viable defense involving a claim that the sexual contact with the victim was consensual. She further argued that the Commonwealth would suffer no significant harm if Smith's pleas were vacated as there was no plea agreement in which the Commonwealth abandoned any charges and the victim and other evidence could be produced at trial. Id. at 69-75.

After conducting an evidentiary hearing in which Smith testified, the court denied his motion, orally explaining his reasons for finding that the pleas were knowingly and voluntarily made and concluding that the reasons offered to withdraw the pleas were not made in good faith and were an example of "buyer's remorse." (12/20/2018 Tr. at 66-80). The court continued the sentencing hearing to January 31, 2019, at which time the court sentenced Smith to life in prison

6

for the rape charge, suspending all but twenty-seven years and ten months of the life sentence; twenty-five years in prison for forcible sodomy, with all twenty-five years suspended; and five years in prison for strangulation, with all five years suspended. (CCT at 189-193). The final order imposing sentence was entered on February 7, 2019. Id. at 189-90.

The circuit court appointed C. David Sands, III to represent Smith on appeal, and Sands filed a timely petition for appeal in the Court of Appeals of Virginia alleging only one error: the trial judge's denial of Smith's motion to withdraw his Alford pleas. The court denied the petition for appeal on January 13, 2020. Smith v. Commonwealth, Record No. 0302-19-2. After summarizing the arraignment, plea colloquy, and the proffer of evidence by the prosecutor, the court concluded that:

> [t]he trial court found no good faith basis for the withdrawal of the pleas, stating that it was "more akin to buyer's remorse" once appellant saw the potential consequences of the pleas. Further, it found that allowing appellant to withdraw the Alford pleas would unduly prejudice the Commonwealth. The victim had moved to another area in Virginia, and the trial court found that the six-month time period that had passed since the trial court accepted appellant's Alford pleas "has created such an unreasonable burden on the victim, and therefore on the Commonwealth, that now recalling her to testify would constitute a prejudice to the Commonwealth."

[Dkt. No. 29-2] at 5-6. The Court of Appeals of Virginia order denying the petition for appeal accepted the trial court's finding that Smith's "testimony was not credible regarding his knowledge about his case and his claim that he only learned the consequences of an Alford plea after he had entered the pleas in this case." Id. at 8. It also rejected Smith's argument "that he had an intellectual disadvantage when deciding to enter into an Alford plea." Id. at 9.

> [T]he trial court found that appellant was "very bright" and capable of answering complex questions, sometimes in a manner that showed a certain level of manipulation "to get the answer he wants to get out." In addition, the competency evaluation concluded that appellant demonstrated necessary understanding of his legal proceedings. Furthermore, with regard to appellant's assertion that he felt pressure to enter the Alford pleas, the trial court found that although court is a stressful place, it was no more stressful to appellant than any other defendant.

[citation omitted]. Moreover, on June 15, 2018, appellant stated that no one had coerced him into entering the pleas. Thus, the evidence supported the trial court's finding that appellant failed to show a good faith basis for withdrawing his <u>Alford</u> pleas.

[Dkt. No. 29-2] at 9.

Smith, by counsel, filed a timely petition for appeal in the Supreme Court of Virginia asserting that the trial court erred in denying the motion to withdraw the guilty pleas and that the Court of Appeals erred in finding his "diminished intellectual ability" argument on appeal was "so different" from what he had argued at trial that it was therefore "waived under Rule 5A:18." <u>Smith v. Commonwealth</u>, Record No. 200128 (VSCT at 7).[4] The Supreme Court of Virginia refused Smith's petition for appeal on December 17, 2020, relieved Sands as appellate counsel, and appointed attorney Juli M. Porto ("Porto") to represent Smith. (VSCT at 55). Porto filed a petition for rehearing, which was denied on February 5, 2021. (VSCT at 56-61, 62).

On February 3, 2022, Smith, proceeding <u>pro se</u>, filed a petition for a writ of habeas corpus in the state trial court. <u>Smith v. Commonwealth</u>, Case No. CL22000130-00. That petition raised two claims, which are essentially identical to the first two claims he has raised in his federal petition—Ineffective Assistance of Counsel and "Strangulation charge omitted from the courts." On March 25, 2022, the state habeas court held that the filing deadline for Smith's habeas petition was December 20, 2021, and it dismissed his petition as untimely. Smith made multiple requests to the court to reconsider the dismissal and informed the court that the Virginia

---

[4] The Court of Appeals of Virginia had also found that Smith's trial counsel "noted during the December 20, 2018 hearing that appellant only had a 'ninth grade education' when explaining that appellant had 'd[one] the best he could' to testify about why he felt pressure to enter the <u>Alford</u> pleas. The argument made at trial was related to appellant's ability to express himself to the court. This is different than what appellant now suggests on appeal, which is that his 'diminished intellectual capacity' prevented him from understanding the nature of the plea agreement." [Dkt. No. 29-2] at 9 n.2. The Court of Appeals of Virginia therefore held that, under state appellate rules, "this aspect of his argument is barred, and we do not consider it on appeal." <u>Id.</u> (citing Va. Sup. Ct. R. 5A:18).

8

Supreme Court denied his petition for rehearing on February 5, 2021.[5] Smith did not file a petition for appeal challenging the erroneous dismissal of his state habeas petition as untimely.

## II. Federal Petition

On February 3, 2022, the same day that he filed his state habeas petition, Smith submitted the pending federal petition, pursuant to 28 U.S.C. § 2254, and applied to proceed in forma pauperis. On April 25, 2022, after Smith paid the filing fee, the petition was filed. The petition lists two grounds for relief, followed by a list of ten additional claims. Smith's claims[6] are as follows:

> Ground One: Ineffective Assistance of Counsel, Denial of Effective Assistance of Counsel. Filed no motion for bill of particulars, discovery, evidence, never went over no evidence, discovery, only guidelines, nothing else nothing, very dishonest, untruthful, subpoena none of my witnesses, did not investigate my case properly, no communication, not one phone call, not one visit until seven months went by he showed up two days before trial. June 13, 2018 went over guidelines and left. Not one letter not one response to my forty some letters I wrote him.

> Ground Two: Strangulation charge omitted from the courts. Motion to dismiss based on speedy trial violation page 2 – section 6 says on December 15, 2017, the court neither requested nor took any pleas from defendant and furthermore, the strangulation charge is omitted from the courts December 15, 2017 arraignment

---

[5] The manuscript record of the state habeas proceedings is not numbered and consists of Smith's initial filings, a handwritten note that includes the statement, "last Supreme Court ruling 12/20/20," the dismissal order, and three pro se letters dated April 3, 2022, May 5, 2022, and June 7, 2022, from Smith to the circuit court asking for reconsideration of the dismissal order. Each letter stated that the circuit court had erred in dismissing his state petition as untimely and that Smith's deadline for filing a state habeas petition was February 5, 2022, not December 20, 2021. Smith attached the Virginia Supreme Court's February 5, 2021 order denying his petition for rehearing and a letter of the same date from his then attorney Porto explaining that Smith had one year from the denial of the rehearing to file a state habeas petition.

[6] The Fourth Circuit recently held that a district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard . . . [and it is] the district court's duty to consider only the specific claims raised in a § 2254 petition." Folkes v. Nelsen, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); see also Frey v. Schuetzle, 78 F.3d 359, 360-61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief.").

order. Then ineffective counsel Mr. James Monroe wrote <u>Alford</u> plea to the charge on yellow paper.

[Dkt. No. 1] at 5, 7.

Smith attached additional pages listing the following ten claims for relief, which are

quoted here:

> 1. No access to . . . competent mental health experts to conduct and appropriate ex[]amination and assist in evaluation, preparation, and presentation of defendant's defense, as required by <u>Ake v Oklahoma</u>, 470 U.S. 68, 84 . . . (1985).
>
> 2. Verble Abuse: Ineffective Assistance of Counsel. Cursed me for calling him. Told me to stop <u>fuckin</u> calling him and I only had called and reached him one time. Then ineffective counsel cursed me for researching my case after I found out he wasn't doing nothing! Told me stay the <u>fuck</u> out of the library. That's verbal abuse from some that's supposed to be on my side!
>
> 3. Speedy Trial: Why would ineffective counsel file a Motion To Dismiss do to went over speedy trial period. If he the one who asked for a continuance. He convinced me that the court wanted a sane evaluation. Ineffective, poor performance, prejudice, very unprofessional.
>
> 4. Due process
>
> 5. overmedicated
>
> 6. Fraud
>
> 7. No search warrant
>
> 8. verble Abuse
>
> 9. 6 and 14 six and Fourteenth Amendments violated. Ineffective Assistance of Counsel
>
> 10. Nobody read me my MARANDA[7]

[Dkt. No. 1] at 16-17.

---

[7] Because Smith has numbered his claims in an inconsistent manner, the Court will refer to the claims as he designated them. The first two claims will be referred to as "Ground One" and "Ground Two," and the remaining ten claims as "Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10."

### III. Exhaustion

"A habeas petitioner is generally barred from obtaining federal habeas review of a claim if he failed to exhaust the claim in state court." Morva v. Zook, 821 F.3d 517, 532 (4th Cir. 2016) (citation omitted). "To [exhaust his claims], the petitioner must have presented to the [highest] state court 'both the operative facts and the controlling legal principles.'" Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (citation omitted). It is Smith's burden to demonstrate he has exhausted his claims. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).

The requirement that facts be exhausted is an important aspect of exhaustion under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). In the Fourth Circuit, the reasonableness of a state court decision is evaluated "in light of the evidence presented in the State court proceeding." Porter v. Zook, 898 F.3d 408, 443 (4th Cir. 2018).

Smith did not exhaust any of his federal habeas claims by presenting them in his direct appeal. Indeed, the only claims raised by either of the two different attorneys who handled Smith's direct appeal focused on the trial court's denial of Smith's motion to withdraw his Alford pleas and his intellectual capacity. In addition, Smith filed his state habeas petition simultaneously with his federal petition, making it impossible for the claims to have been exhausted by the state habeas court even if that court had not dismissed the petition as untimely. Compare [Dkt. No. 1] at 15 (Smith's signature dated February 3, 2022) and [Dkt. No. 1-2] (envelope post marked February 4, 2022, in which Smith mailed his federal petition) to [Dkt. No. 29-3] (state habeas petition dated February 3, 2022).

11

## IV. Procedural Default

A habeas claim that has not been presented to the state's highest court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner now attempted to present it to the state court. See Hedrick v. True, 443 F.3d 342, 364 (4th Cir. 2006). "If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Breard, 134 F.3d at 619. "A habeas petitioner is barred from seeking federal review of a claim that was presented to a state court and 'clearly and expressly' denied on the independent, adequate state ground of procedural default." Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir. 1996) (citations omitted). A state procedural rule is "adequate" if it is firmly established and regularly or consistently applied by the state court and "independent" if it does not depend on a federal constitutional ruling. Yeatts v. Angelone, 166 F.3d 255, 263-64 (1998).

If Smith were to now return to state court to raise any of his federal claims in a habeas petition, the claims would be deemed procedurally barred as untimely and successive.[8] Virginia's habeas statute of limitations, Virginia Code § 8.01-654(A)(2), is an independent and adequate state procedural rule that bars federal review. Walker v. Martin, 562 U.S. 307, 321 (2011) (state statutes of limitations may be an independent and adequate state law ground barring federal habeas review); Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006)

---

[8] Besides being time barred, Smith's failure to present a claim that was available on direct appeal would bar consideration of the claim in state habeas proceedings. See Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974) (non-jurisdictional issues not raised at trial and on direct appeal are not cognizable in a petition for a writ of habeas corpus). A finding of default under the rule of Slayton v. Parrigan is an independent and adequate state law ground that precludes federal review absent a showing of cause and prejudice for the default. See Prieto v. Zook, 791 F.3d 465, 468 (4th Cir. 2015).

(finding claims simultaneously exhausted and defaulted in federal habeas actions because claims not presented in state court would now be time barred by adequate and independent default under Virginia Code § 8.01-654(A)(2)); Bassette v. Thompson, 915 F.2d 932, 936-37 (4th Cir. 1990) (an unexhausted claim that would be held to be defaulted if the petitioner were to return to state court is deemed simultaneously exhausted and defaulted for purposes of federal habeas review). Likewise, Virginia's bar on successive petitions, Virginia Code § 8.01-654(B)(2), is an adequate and independent state ground that precludes review of the claim in federal habeas. See Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997). Accordingly, all of Smith's claims are defaulted.

A federal court may nevertheless review a defaulted claim if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or a fundamental miscarriage of justice. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2005). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." Coleman v. Thompson, 501 U.S. 722, 753 (1991) (citation omitted). To establish cause, a petitioner must "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman, 501 U.S. at 753-54; Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). To show "prejudice," a petitioner must show that an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis removed). A court

13

need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

Smith has not alleged in his petition or in any of his many supplemental filings and opposition briefs that his appellate counsel were ineffective for limiting his direct appeal to the trial court's denial of his motion to withdraw his pleas and to arguments about his intellectual capacity. Moreover, he has not alleged any "objective factor external to the defense" that impeded his efforts to comply with the state procedural rule. See Wolfe v. Johnson, 565 F.3d 140, 158 (4th Cir. 2009) (quoting Murray, 477 U.S. at 488). Although Smith alleges that he is diabetic and suffers from many mental health issues, which he claims affected his ability to complete his habeas petitions, he had counsel throughout the entire direct appeal process. [Dkt. No. 1] at 18; [Dkt. No. 15] at 65-66. Moreover, in the two letters he wrote to the state court explaining that it had erred in finding his state habeas petition untimely and in his letters to this Court regarding the statute of limitations, he clearly has demonstrated an understanding of time limits. [Dkt. No. 1] at 18; [Dkt. No. 10] at 1. On direct appeal, the Court of Appeals of Virginia held that the record supported the trial court's findings that Smith was "capable of answering complex questions, sometimes in a manner that showed a certain level of manipulation 'to get the answer he wants to get out.' In addition, the competency evaluation concluded that appellant demonstrated necessary understanding of his legal proceedings." [Dkt. No. 29-2] at 9.

The state court finding that Smith's state habeas petition was untimely is binding on this Court. See Pace v. DiGuglielmo, 544 U.S. 408, 413-14 (2005) (citation omitted); Johnson v. McCaughtry, 265 F.3d 559, 564 (7th Cir. 2001) (stating that a federal court determines whether an item is "properly filed" by "looking at how the state courts treated it" and if the state court rejects a document for a procedural irregularity, it is not "properly filed"). Moreover, because he

14

did not appeal the March 22, 2022 Order dismissing his state habeas petition, Smith has

defaulted all of the claims he raised in that petition. Smith has failed to point to anything that

obstructed him from appealing the March 22, 2022 Order.[9]

Most importantly, Smith has failed to establish any miscarriage of justice. The Court of

Appeals of Virginia affirmed the trial court's finding that Smith did not have a good faith basis

to withdraw his guilty pleas. [Dkt. No. 29-2] at 8-10. Moreover, as the prosecutor's summary of

the evidence during Smith's plea colloquy shows, Smith's convictions were not a miscarriage of

justice because there was overwhelming evidence of guilt.

> [The victim's] testimony would have been that [Smith] offered her a hundred
> dollars to stick it in her, that she refused. She would also testify that he had been
> drinking that night. She wasn't sure if he was using narcotics, but he had been
> drinking. And that when she refused, he actually wrapped his arm around her
> neck. He was seated on a chair in the living room, and she was seated on a
> mattress on the floor in front of the chair and he started to choke her. She would
> have testified, Judge, that during the course of him checking her, that there were
> portions where she blacked out. That she could not breathe. And they ended up
> sliding down onto the mattress, with him still behind her, her laying on top of
> him, and she looked over and saw a butcher knife beside the chair.
>
> She grabbed the butcher knife and she started to stab backwards with the butcher
> knife. He still did not release his hold. It loosened a little bit. And then he forced
> her to take off her pants and forced her to take off his pants. She said at this point,
> they had moved so that his hands were actually in the front of her neck. That he
> forced her to perform oral sex on him and that his penis did go in her mouth. And
> then he forced her to have sex with him.
>
>                                       * * *
>
> Immediately after that happened, [the victim] called 911. There is a recorded 911
> call where she was hysterical. She is telling the 911 operator that [Smith] tried to
> kill her. She is reporting that she needed immediate police response. You can tell
> that he is in the background at some point, because she is yelling at him and
> telling him to get away from her. And then he leaves the house before police can
> respond.

---

[9] See Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008) ("[E]ven where there is some error
in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because
the assignment of error relating to those post-conviction proceedings represents an attack on a
proceeding collateral to detention and not to the detention itself.") (citing cases).

* * *

There was a forensic examination done by Gail Perkins at St. Mary's . . . There were red spots on the top of [the victim's] shirt. [The victim] would have testified that that was actually the defendant's blood and it had gotten on her from the knife wounds that had been caused. And those spots were just on the front of her shirt. They weren't on the back of her shirt. There was also what appeared to be blood on her thumbnail and some on her hand as well.

* * *

As to the strangulation charge, Judge, around both eyes there was what the SANE nurse would describe as petechia, and Nurse Perkins would have testified that petechia is a result of, can be caused by being strangled. And it is the blood vessels breaking around your eye due to that loss of oxygen. In addition to that, Judge, there were marks all over her neck the detective saw, from her ears going down to her collar bone.

* * *

That lab report shows that from the swab that was taken from [the victim's] vaginal, cervical sample, the inside of her vagina, there was a DNA mixture profile that was developed, and Mr. Daniel Smith, the defendant, could not be eliminated as a contributor of that, and the statistics were one in greater than 7.2 billion.

(6/15/18 Tr. at 32-38).

In Martinez v. Ryan, 566 U.S. 1 (2012), the United States Supreme Court recognized a narrow exception for defaulted claims of ineffective assistance of counsel. Martinez held that in a state, such as Virginia, where a prisoner is not allowed to raise an ineffective assistance of counsel claim on direct appeal, "a prisoner may establish cause for a default of an ineffective-assistance [of trial counsel] claim . . . where the state courts did not appoint counsel in the initial-review collateral proceeding . . . [or] where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington." Id. at 15.   In addition to establishing cause, a prisoner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one . . . that the claim has some merit." Id.; see also Trevino v. Thaler, 569 U.S. 413, 423 (2013).

16

None of Smith's ineffective assistance of counsel claims satisfy the <u>Martinez</u> exception, which he has not invoked to excuse his default, because none of his claims are "substantial." Whether a claim is substantial is determined by applying the two-prong test established in <u>Strickland</u>. First, Smith must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. In determining whether a trial counsel's performance was deficient, a court must evaluate it for "reasonableness under prevailing professional norms." <u>Id.</u> at 688. Moreover, a court must avoid second-guessing with the benefit of hindsight and must presume that counsel's performance was reasonable and adequate. <u>Id.</u> at 689.

The second prong of the <u>Strickland</u> test requires Smith to show that counsel's substandard performance caused him prejudice. In the context of a guilty plea this requires "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); <u>Burket v. Angelone</u>, 208 F.3d 172, 189 (4th Cir. 2000) (citation omitted). In determining the prejudice prong, Smith's "subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." <u>United States v. Fugit</u>, 703 F.3d 248, 260 (4th Cir. 2012) (quoting <u>Pilla v. United States</u>, 668 F.3d 368, 373 (6th Cir. 2012) ("The test is objective, not subjective.")). Smith has failed to make any showing that he was prejudiced by his trial counsel's actions in each of his allegations of ineffective assistance of counsel, and the record does not suggest that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.

In Ground One and Claim 9, Smith alleges various inactions by his trial counsel, including "no motion for bill of particulars, discovery, evidence"; counsel never reviewed evidence or discovery with him; that counsel was "very dishonest" and "untruthful"; that he did not subpoena any of Smith's "witnesses"; that he did not investigate the case properly; and that he provided "no communication, not one phone call, not one visit" for seven months until "two days before trial." Smith does not identify what further investigation should have been conducted, he does not proffer what evidence any further investigation might have yielded, and he does not show how he was prejudiced by any alleged deficient performance. Such allegations of ineffective assistance of counsel, without factual support, are insufficient to raise a constitutional issue,[10] and are not a sufficient basis for habeas corpus relief.

Moreover, the allegations are refuted by the record. After Smith made similar accusations during his plea colloquy, Monroe explained how he had worked on Smith's case, and the trial court accepted his description.

> MR. MONROE: Your Honor, I will tell the court that I have met, just this week alone, I have met with Mr. Smith for a total of six hours. One session that was in and of itself over three hours long, or almost three hours long. And I met with Mr. Smith in December. I met with him to go over the results of his mental status report when that was returned by Doctor McWilliams in March. I reviewed with him all the Discovery that I had gotten from the open file policy that Ms. Sichol [the prosecutor] has in her office, including the police reports. I shared with him the relevant portions of the DNA results. I shared with him the portions of the SANE evaluation. I explained to him the elements of the offense. I have conveyed to him everything that had been passed from the Commonwealth to me, and everything that was in the file that was, I'm entitled to get a copy of. I have listened to all of the audio tapes, audio recordings of the 911 matters, including conversations with Mr. Smith. That is the one thing I have not been able to share with him. And Ms. Sichol received them just yesterday. She forwarded them to me, as well. There is nothing, per se, explosive contained in those audio

---

[10] See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (holding that an allegation of inadequate investigation, standing alone, is not an adequate basis for habeas relief); see also Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (stating that a petitioner must allege "what an adequate investigation would have revealed").

18

recordings. But as far as the number of hours and the amount of time that I have devoted to Mr. Smith's case, it is substantially, not counting the times that I have spent in my office working on this case independent of his company, it is well rounded in the high double digit number of hours.

THE COURT: Has he given you the name of any witnesses or addresses of any witnesses?

MR. MONROE: Your Honor, he wrote a letter to me back in April containing the names of two witnesses, and –

DEFENDANT: It is on every one of these.

MR. MONROE: When I questioned him about the basis of those witnesses, I explained to him that as an officer of the court, I could not issue a subpoena for those witnesses, because the testimony that they would offer would be either, one, not relevant to the issue at hand; or number two, run us afoul of 18.2-67.7.76.

(6/15/18 Tr. at 13-15).[11] Trial counsel admitted that he likely used vulgar language when telling

Smith to stop doing legal research:

> MR. MONROE: I do distinctly recall the conversation about the law library, and that sounds exactly what I said to him, because he was spouting off laws that were so outdated that it was almost like we were on stone tablets. And I said, that's not going to do you any good. It's going to get you all worked up. You need to stay out of the law library, and I will explain the law to you. You need to focus on writing letters to me, which he diligently did, and I read each and every one of them. I stand upon my prior statement, Your Honor. But I will say to the court, if he is just that unhappy with the level of due diligence that I have put into this case, I don't know if that can be cured. But I have put my due diligence into this matter.

(6/15/18 Tr. at 17-18). The prosecutor confirmed much of Monroe's statement with regard to his

investigation indicating that he had complete access to the prosecution's file via open file

discovery.

> MS. SICHOL: I will speak upon Mr. Monroe's behalf and say that he has been to our office numerous times. He has reviewed everything that the Commonwealth has. We have an open file discovery policy, and we provide the defense attorney with everything that we have that we are going to trial on. So he is certainly more

---

[11] Virginia Code § 18.2-67.7 prohibits "general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct" and allows "evidence of specific instances of his or her prior sexual conduct" only if such evidence is both relevant and offered for one of three narrow purposes.

than familiar with the facts of the case, and with this case in particular. He has even reviewed body camera videos of the victim's statements to police. I mean, everything that I have I know that he has reviewed and he has actually reviewed them on multiple occasions. So, I would suggest to the court that Mr. Monroe is a competent attorney. He is very prepared when it comes to this case.

(6/15/18 Tr. at 19-20).[12]

The record establishes that counsel had Smith evaluated for sanity at the time of the offense and for competency to stand trial. (CCT at 21, 23; 3/23/18 Tr. at 4-6). Sanity has never been raised as an issue in these proceedings and the competency report, completed on March 22, 2018, (Comm. Ex. No. 1, December 20, 2028 hearing), supported the trial court's conclusion that Smith was competent to stand trial. (CCT at 23). The prosecutor verified that counsel had complete access to her file, and therefore there was no need to seek a bill of particulars or file a motion for discovery. (6/15/18 Tr. at 19-20).[13] Counsel determined that the testimony of the witnesses that Smith identified was either irrelevant or inadmissible under state law, and Smith has not provided any proper relevant statements by any witnesses.[14]

---

[12] Smith also alleges in one of the supplements to his petition that his trial counsel had a "conflict of interest." Smith appears to use the phrase "conflict of interest" to mean his belief that counsel was not working in Smith's interest, rather than alleging a separate claim.

> I simply let them [know] Mr. James Monroe did nothing I mean not one thing on behalf of his client Mr. Daniel Levern Smith. He was very unprofessional, dishonest, very poor performance, and prejudice and verbally abusive to his client, among many other things requested of him by his client. So that's why I say there was a conflict of interest before trial.

[Dkt. No. 15] at 30.

[13] The record also reflects that trial counsel was provided with a copy of the transcript from the multi-jurisdictional grand jury proceedings. (12/15/17 Tr. at 3-4).

[14] Smith identifies two witnesses, but he did not provide an affidavit from either witness. According to Smith, Thomas Beavers allegedly drove Smith to pick up the victim and agreed to drive the victim to Fredericksburg the next day. Beavers would have also allegedly testified that the victim was "red, swollen eyes, crying, cussing" and looked like she had "been in a fight." [Dkt. No. 9] at 16. Keisha Jones would allegedly verify that the victim called Smith to come pick her up because the victim had been beaten by a boyfriend. Id. The proffer is not sworn to by either witness or the petitioner. The alleged testimony of Beavers or Jones does not establish that

Moreover, nothing in the federal petition addresses the uncontroverted facts that the victim was extremely distressed on the 911 call; that Smith fled when the victim called 911; that he tried to throw away incriminating evidence; and that he had injuries consistent with the victim's account of the injuries she inflicted on Smith in self-defense when he attacked her. That evidence was corroborated by Smith's blood on the victim's shirt. Smith also made statements trying to explain the incident that were inconsistent with the physical facts. The victim's statements and the physical evidence of the injuries, both to Smith and to the victim, would have strongly disproved Smith's suggested defense that he and the victim had consensual sex. In sum, the record provides no support for Smith's Ground One and Claim 9 that trial counsel's investigation of Smith's case and his advice to enter Alford pleas were unreasonable. As Ground One and Claim 9 are not "substantial" ineffective assistance of counsel claims, the Martinez exception does not apply and they will be dismissed.

In Ground Two and Claim 3, Smith alleges that his trial counsel was ineffective in presenting his motion to dismiss based on violations of Smith's statutory speedy trial rights under Virginia Code § 19.2-243.[15] Whether Smith's statutory speedy trial rights were violated was a question of state law that does not implicate federal rights, which are what are at issue on

_____

either witness was present at the time of the incident, and hence their testimony would not have been relevant to Smith's guilt or innocence. Moreover, these witnesses would not have added anything to Smith's claim that he would have put forward a defense that he had consensual sex with the victim.

[15] Smith attaches great importance to the omission of the strangulation indictment number on the trial court's December 15, 2017 order and includes this issue in Ground Two; however his reliance is misplaced. An order entered the same day after the same hearing noted all three indictments and that Smith was to be held without bail. (CCT at 17, 18). The indictments had already been served, Smith knew the charges against him, he indicated during the colloquy that he and his counsel had discussed the charges, and all three charges were discussed during the arraignment on December 15, 2017 hearing. (12/15/17 Tr. at 4). The remainder of the orders entered reference all three indictments. Smith's reliance on an obvious scrivener's error is therefore frivolous.

federal habeas review. See Billotti v. Legursky, 975 F.2d 113, 119 (4th Cir. 1992) (citation omitted).

Smith was indicted on November 15, 2017 and arrested on a capias on November 21, 2017. The circuit court granted Smith's motion for a competency evaluation on January 26, 2018 and found Smith competent after a hearing on March 23, 2018. Because the circuit court's March 23, 2018 order continuing the matter to June 15, 2018 for trial was on a "joint motion," the time period between March 23, 2018 and June 15, 2018 was properly excluded. (CCT at 23). The trial judge also excluded the time between Smith's request for the competency evaluation and the court's determination that he was competent (January 26, 2018 through March 23, 2018). (6/15/18 Tr. at 41). In short, counsel filed a motion to dismiss, and the trial court denied the motion after finding that the date of arrest and certain continuances were attributable to the defendant. Because Ground Two and Claim 3 are not substantial constitutional claims they will be dismissed.[16]

---

[16] To the extent Smith attempts to raise a free standing constitutional speedy trial claim, his claim would have no merit. Smith was arrested on November 15, 2017, and thereafter was indicted, convicted on his pleas, and was originally to be sentenced in September 14, 2018. (CCT at 46-49). Counsel was forced to withdraw because of differences with Smith, and new counsel filed a motion to withdraw the pleas which was heard and denied on December 29, 2018. Although Smith was sentenced on January 31, 2019, which was slightly more than one-year after his arrest, significant portions of that year would have been excluded while motions were pending. The record establishes that the charges were brought and Smith was convicted by his pleas in well under the one-year period that would require an evaluation of the factors in Barker v. Wingo, 407 U.S. 514, 515 (1972) (requiring consideration of the length of the delay; the reason for the delay; the defendant's assertion of his right to a speedy trial; and the prejudice to the defendant). See United States v. Woolfolk, 399 F.3d 590, 597 (4th Cir. 2005) ("One year is the 'point at which courts deem the delay unreasonable enough to trigger the Barker [i]nquiry.'" (quoting Doggett v. United States, 505 U.S. 647, 652 n. 1 (1992)). Even applying the Barker factors, it is clear that the majority of the delay was attributable to Smith. Moreover, he clearly was not concerned about a speedy trial when he asked for a continuance of his trial date on June 15, 2018, after his motion to dismiss was denied. (6/15/18 Tr. at 12). Therefore, he has not alleged any prejudice from any delay.

In Claim 1, Smith alleges that his trial counsel was ineffective for not providing him access to competent mental health experts. The record establishes that counsel did have Smith undergo a mental evaluation, and both the competency evaluation as well as the psychosexual examination conducted after Smith's Alford pleas were provided to the circuit court during sentencing. The reports discussed Smith's mental health issues, including PTSD, and noted his claims to have been diagnosed as bipolar and other matters. At sentencing, counsel introduced a psychiatric report from October 2017 that also discussed PTSD, a history of Major Depression, and other conditions. The trial court reviewed the reports and considered them in arriving at Smith's sentence. (1/31/19 Tr. at 73). Because Smith can make no showing to support either prong of Strickland, Claim 1 will be dismissed.

In both Claims 2 and 8, Smith alleges his attorney's use of course language and infrequent communications establish that counsel was ineffective, and that counsel had a conflict of interest. The Fourth Circuit has found that an attorney's poor choice of words and perceived infrequency of his visits do not establish a conflict of interest or ineffective assistance of counsel unless they prejudice the defendant's case.

> [T]he Sixth Amendment does not guarantee representation by a lawyer in whom the defendant reposes special confidence or with whom the defendant is able to establish a "meaningful relationship." Morris v. Slappy, 461 U.S. 1, 13-14 (1983). Therefore, a defendant's disappointment with appointed counsel can undermine his conviction only if counsel's performance fell below an objective standard of reasonableness under all the circumstances, Strickland, 466 U.S. at 668, and if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

United States v. Burns, 990 F.2d 1426, 1437 (4th Cir. 1993). Moreover, "[m]ore than a mere possibility of a conflict . . . must be shown. The Sixth Amendment is implicated only when the representation of counsel is adversely affected by an actual conflict of interest." United States v. Tatum, 943 F.2d 370, 375 (4th Cir. 1991). Smith's allegations of infrequent and short meetings

23

are not enough under Strickland, without evidence of prejudice or other defects. Lenz v. Washington, 444 F.3d 295, 303 (4th Cir. 2006) (holding that petitioner failed to show prejudice by alleging infrequent and short counsel visits).

Smith makes no showing of prejudice. Although Smith denies that he raped, forcibly sodomized, and strangled the victim, he stated in the psychosexual evaluation that the victim performed oral sex on him and that the two of them engaged in sexual intercourse. (Comm. Ex. No. 3 at 8, December 20, 2018 hearing).  Moreover, despite his later denials of using force, when he was arrested, he admitted to law enforcement that he choked the victim. That admission was corroborated by the bruising on the victim's throat and the petechia. Given Smith's admissions and flight from the scene as well as the victim's statements and forensic evidence (6/15/28 Tr. at 41-42), the victim's distraught demeanor during the recorded 911 call, which indicated that she was "traumatized" and "hysterical," an objective review of the evidence shows that Smith cannot establish prejudice. Because Claims 2 and 8 are not "substantial" ineffective assistance of counsel claims, they will be dismissed.

In Claims 4, 5, and 6, Smith fails to identify a specific due process violation, fails to demonstrate that he was overmedicated[17] at a relevant time or that the alleged overmedication

---

[17] Smith has submitted hundreds of pages of unauthenticated medical records without offering any coherent argument as to their relevance. Many of the documents are from several years before the incident or are from well after, when he was inside the Virginia Department of Corrections. Smith's conclusory assertion that he was not taking his medications when he appeared in court does not support habeas corpus relief. Smith's answers to the trial court's questions indicate that Smith was well aware of what he was doing during the plea proceedings and was coherent. Indeed, during that hearing, Smith's list of complaints about his counsel went on for almost three full pages, and he provided a three page "rebuttal" to counsel's answer to his complaints. (6/15/18 Tr. at 10-13, 15-17).

The trial court spoke at length with Smith and had ample opportunity to assess his understanding of the proceedings. The court found that Smith's pleas were made freely, intelligently, voluntarily, and with the advice of counsel, and that Smith understood both the nature of the charges and the consequence of his pleas. Id. at 49. Smith also testified in a

has any relevance, and has not articulated any facts supporting a claim of fraud. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding that the district court may disregard "vague and conclusory allegations" in habeas petitions and review only claims "supported by facts and argument."); see also Sanders v. United States, 373 U.S. 1, 19 (1963) (finding summary denial of habeas action appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations"). Because Claims 4, 5, and 6 are not substantial, they will be dismissed.

In Claim 7, Smith alleges there was "no search warrant." That claim is contradicted by the record that shows that, pursuant to a search warrant, the police recovered the knife the victim used in self-defense during her attack, took pictures of Smith's injuries, and recovered the sheets Smith balled up and threw away. (6/15/28 Tr. at 41, 43). Smith has not cited to any facts showing that the police failed to obtain a search warrant for the search of his house. See Sanders, 373 U.S. at 19 (finding summary denial of habeas action appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations"). Moreover, Smith annotated a document he filed in response to respondent's Motion to Dismiss in which he stated that he was served with "search warrants at the Northern Neck Regional Jail on November 16, 2016." [Dkt. No. 37-1] at 21. Because Claim 7 is not substantial, it will be dismissed.

Smith's final claim, Claim 10, is conclusory. It is devoid of facts, dates, and a recitation of what actual statements he believes were taken in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Further, Smith admitted in his August 23, 2018 letter to the circuit court that he was

coherent manner at his motion to withdraw his pleas and during his sentencing hearing. Smith has not shown that his particular level of medication interfered with any constitutionally protected right, or how it is relevant to his alleged defense of consent.

"read [his] rights" when he was "told [h]e was under arrest." (CCT at 50). Because Claim 10 is conclusory and not substantial, it will be dismissed.

Lastly, to the extent Smith has asked this Court to appoint counsel for him in this habeas proceeding, he has not shown good cause for such relief. "The power to appoint counsel is a discretionary one, but it is an abuse of discretion to decline to appoint counsel where the case of an indigent plaintiff presents exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). "The existence of such circumstances will turn on the quality of two basic factors—the type and complexity of the case, and the abilities of the individuals bringing it." Id. "If it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." Id. Here, Plaintiff's claims are not particularly complex, and there is no indication that Plaintiff lacks capacity to pursue or present those claims.

## IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 28] will be granted, Smith's motions for extension of time to file his response [Dkt. No. 34], and to proceed in forma pauperis [Dkt. No. 32], will be denied as moot, and his Motion to Appoint Counsel [Dkt. No. 35] and Motion to Dismiss Based on Speedy Trial Violation [Dkt. No. 37] will be denied. An appropriate Order and judgment shall issue.

Entered this 30 day of March 2023.

Alexandria, Virginia

_____/s/_____
Leonie M. Brinkema
United States District Judge